Liberato P. Verderame
**EDELSON LECHTZIN LLP**
(ID# 032251997)
3 Terry Drive, Suite 205
Newtown, PA 18940
Tel: (215) 867-2399
Fax: (267) 685-0676
lverderame@edelson-law.com

Attorneys for Plaintiffs and the Proposed Classes
[Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NAJAH A. HENRY, CHANEL J. JACKSON, ALEXIS DIAS, HOLLY BUFFINTON and CONSTANCE VENABLE**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**GERBER PRODUCTS COMPANY** (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America),<br><br>Defendant. | **CIVIL ACTION**<br><br>CASE NO.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs NAJAH A. HENRY, CHANEL J. JACKSON, ALEXIS DIAS, HOLLY BUFFINTON, and CONSTANCE VENABLE ( each a "Plaintiff" and collectively 'Plaintiffs") on behalf of themselves and all others similarly situated, by their undersigned attorneys, against Defendant, GERBER PRODUCTS COMPANY (d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America) (hereafter "Gerber"), allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, allege, upon information and belief and investigation of their counsel, as follows:

## INTRODUCTION

1.      This is a consumer class action brought individually by Plaintiffs and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more baby foods manufactured by Gerber.[1]

2.      Gerber claims to be "the world's most trusted name in baby food." http://www.gerber.com/nestle_nutrition/default.aspx. Gerber offers more than 190 products in 80 countries, with labeling in 16 languages. Defendant purchased the Gerber brand in 2007 for $5.5 billion in cash. Gerber reportedly controls between 70 and 80 percent of the baby food market in the United States.

3.      Gerber does not list heavy metals as an ingredient on the Products' label nor does it warn of the potential presence of heavy metals in the Products.

4.      Unbeknown to Plaintiffs and members of the proposed Classes, and contrary to the representations on the Products' label, the Products contain heavy metals, including arsenic, cadmium, and lead at levels above what is considered safe for babies, which, if disclosed to Plaintiffs and members of the proposed Classes prior to purchase, would have caused Plaintiffs and members of the proposed Classes not to purchase or consume the Products.

5.      As a result, the Products' labeling is deceptive and misleading.

---

[1] The purchased products are: Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey, Meat Sauce Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Sitter 2nd Foods Apple Chicken Dinner Plastic Tub, Gerber Sitter 2nd Foods Vegetable Beef Dinner Plastic Tub, Gerber Toddler Mashed Potatoes & Gravy with Roasted Chicken Meal, Gerber Toddler Pick-ups Chicken & Carrot Ravioli Meal, Gerber Toddler Spaghetti Rings in Meat Sauce Meal, Gerber Toddler Spiral Pasta in Turkey Meat Sauce Meal, and Gerber Sitter 2nd Foods Turkey Rice Dinner Plastic Tub (the "Products").

2

6.     Plaintiffs and the members of the proposed Classes, as defined below, thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

## THE PARTIES

7.     Plaintiff Najah A. Henry is a resident of the Commonwealth of Pennsylvania, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Henry saw Defendant's nutritional claims on the packaging which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Henry was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Henry was injured by paying a premium for the Baby Foods that have no or de minimis value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

8.     Plaintiff Chanel J. Jackson is a resident of the Commonwealth of Pennsylvania, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Jackson saw Defendant's nutritional claims on the packaging which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Jackson was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Jackson was

injured by paying a premium for the Baby Foods that have no or de minimis value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

9.      Plaintiff Alexis Dias is a resident of the State of Rhode Island, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Dias saw Defendant's nutritional claims on the packaging which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Dias was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Dias was injured by paying a premium for the Baby Foods that have no or de minimis value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

10.     Plaintiff Holly Buffinton is a resident of the State of Rhode Island, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Buffinton saw Defendant's nutritional claims on the packaging which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Buffinton was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Buffinton was injured by paying a premium for the Baby Foods that have no or de minimis value—or whose value was at least less

than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

11.     Plaintiff Constance Venable is a resident of the State of Tennessee, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Venable saw Defendant's nutritional claims on the packaging which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Venable was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Venable was injured by paying a premium for the Baby Foods that have no or de minimis value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

12.     Defendant Gerber Products Company, also doing business as Nestlé Nutrition, Nestlé Infant Nutrition, or Nestlé Nutrition North America, is a Michigan corporation with its headquarters located in Florham Park, New Jersey.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most proposed Class Members.

14.     This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets products, and conducts business, in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

15.     Venue is proper in this Court because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Furthermore, Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS

16.     Defendant manufactures, distributes, promotes, offers for sale, and sells the Products, both in the past and currently.  Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

17.     An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy revealed that baby foods manufactured by Gerber are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[2]

18.     Exposure to heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function.  Lead and arsenic are heavy metals known to cause a wide spectrum of adverse outcomes in pregnancy such as abortions, retarded growth at the intrauterine cavity, skeletal deformities, malformations and retarded development especially of the nervous system.

19.     Specifically, the Subcommittee found that:

_____

[2] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).

   a.  Gerber used high arsenic ingredients, using 67 batches of rice flour that had
       tested over 90 ppb inorganic arsenic;

   b.  Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead.
       Gerber also used twelve other batches of sweet potato that tested over 20
       ppb for lead, the EU's lenient upper standard.  The results for its sweet
       potatoes and juices demonstrated its willingness to use ingredients that
       contained dangerous lead levels;

   c.  Gerber does not test all of its ingredients for cadmium.  Of those it does test,
       it accepts ingredients with high levels of cadmium.  Gerber used multiple
       batches of carrots containing as much as 87 ppb cadmium, and 75% of the
       carrots Gerber used had more than 5 ppb cadmium— the EPA's drinking
       water standard;

   d.  Gerber rarely tests for mercury in its baby foods.

   e.  Gerber's policy is to test only ingredients, and not its final product(s)
       According to the Subcommittee, that policy "recklessly endangers babies
       and children and prevents the companies from ever knowing the full extent
       of the danger presented by their products."  Finished baby foods have more
       toxic ingredients than their ingredients alone.  This means that only testing
       ingredients gives the false appearance of lower-than-actual toxic heavy
       metal levels.

20.    These results are multiples higher than allowed under existing regulations for other
products.  For example, the Food and Drug Administration has set the maximum allowable levels
in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and 5 ppb cadmium, and the Environmental

Protection Agency has capped the allowable level of mercury in drinking water at 2 ppb.  The test results of baby foods and the ingredients therein eclipse those levels: including results up to 91 times the arsenic level, up to 177 times the lead level, up to 69 times the cadmium level, and up to 5 times the mercury level.

21.    Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults.  A dose of lead that would have little effect on an adult can have a significant effect on a child.  In children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[3]

22.    EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels. Lead is persistent, and it can bioaccumulate in the body over time.[4]

23.    The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children.  "In other words, there are no safe limits for Pb."[5]

**CLASS ACTION ALLEGATIONS**

24.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained throughout discovery.  Notwithstanding, at this time, Plaintiffs bring this

---

[3] See https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.
[4] See https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.
[5] G. Schwalfenberg, I. Rodushkinb, S.J. Genuis, "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).

action and seek certification of the following proposed Class: All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

25.     Plaintiffs also seek certification of the following subclasses:

    a.   All persons in the Commonwealth of Pennsylvania who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification, (the "Pennsylvania subclass")

    b.   All persons in the State of Rhode Island who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification, (the "Rhode Island subclass").

26.     Excluded from the proposed Classes are the Defendant, and any entities in which the Defendants have controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

27.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

28.     Numerosity – Federal Rule of Civil Procedure 23(a)(1).  The members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands to tens of thousands.  The number of members in the Classes is presently unknown to Plaintiffs but may be verified by Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

29.     Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).   Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.   Such common questions of law or fact include, but are not limited to, the following:

      a.   Whether the Products contain dangerous levels of heavy metals;

      b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

      c.   Whether Defendant's actions violate the state consumer fraud statutes invoked below;

      d.   Whether Defendant's actions constitute common law fraud;

      e.   Whether Plaintiffs and Members of the Classes were damaged by Defendant's conduct;

      f.   Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class Members; and

      g.   Whether Plaintiffs and Class Members are entitled to injunctive relief.

30.     Typicality – Federal Rule of Civil Procedure 23(a)(3).   The claims of the named Plaintiffs are typical of the claims of other Members of the Classes.   All Members of the Classes were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular Class members.

31.     Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).   Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other Class Members; they have retained class counsel competent to prosecute class actions and financially able to represent the Classes.

32.     Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole.  In particular, Plaintiffs seek to certify a Class to enjoin Defendants from selling or otherwise distributing baby foods until such time that Defendants can demonstrate to the Court's satisfaction that its baby foods are accurately labeled.

33.     Superiority – Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to any other means of adjudication for this controversy.  It would be impracticable for Members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the Members of the Classes are relatively small compared to the cost of individually litigating their claims.  Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system.  A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
Breach of Express Warranty Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

34.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

35.     Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiffs and the Class.

36.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Baby Foods are:

   a.   Natural;

   b.   Appropriate for certain "Stage[s]" of babies; and

   c.   "real food for babies"

37.     Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Baby Foods.

38.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiffs and the Class.  Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

39.     Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

   a.   Are not natural or suitable for consumption by human infants; and

   b.   Contain, or may contain, levels of various heavy metals and/or perchlorate;

40.     Defendant was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy.

41.     Privity exists because Defendant expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were

healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

42.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

43.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**COUNT II**
Breach of Implied Warranty of Merchantability Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

44.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

45.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

46.     There was a sale of goods from Defendant to Plaintiffs and the Class.

47.     At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

48.     The Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

49.     The Baby Foods did not conform to Defendant's affirmations of fact that they were natural because they contained the chemical perchlorate.

50.     Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

51.     Defendant was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

52.     Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

53.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate, and/or unnatural or other ingredients.

54.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT III**
Fraudulent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

55.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

56.     Defendant falsely represented to Plaintiffs and the Class that their Baby Foods are:

a.   Natural;

b.   Appropriate for certain "Stage[s]" of babies; and

c.   "real food for babies."

57.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase its Baby Foods.

58.     Defendant knew that their representations about the Baby Foods were false in that the Baby Foods contained, or were at risk of containing, levels of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.  Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

59.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment.  Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

60.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the

price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

61.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT IV**
Fraud by Omission Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

62.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

63.     Defendant concealed from and failed to disclose to Plaintiffs and the Class that their Baby Foods contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

64.     Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

65.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

66.     Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendant.

67.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

68.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
Negligent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

69.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

70.     Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Baby Foods.

71.     Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

72.     Defendant knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not natural because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals, perchlorate, and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals and perchlorate; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

73.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

74.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**
Unjust Enrichment Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

75.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

76.     Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

77.     Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

78.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

79.     Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

80.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VII**
Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law,
73 Pa. Cons. Stat. Ann. §§201-1 *et seq*. (the "UTPCPL") on Behalf of Plaintiffs Henry and
Jackson and the Pennsylvania Sub-Class

81.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

82.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 *et seq*. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83.     Defendant is a manufacturer, marketer, seller, and distributor of the Baby Foods.

84.     Defendant markets and sells the Baby Foods with express warranties created on the Products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the Baby Foods.

85.     Plaintiffs Henry and Jackson and the Pennsylvania Sub-Class purchased the Baby Foods for personal, household, or family use.

86.     Defendant misrepresented the quality of the Baby Foods and the ingredients contained therein on its labels in violation of the UTPCPL.

87.     Defendant's deceptive, false and misleading statements deceived Plaintiffs Henry and Jackson and Pennsylvania Sub-Class members and deceived a substantial segment of the target consumer audience in violation of the UTPCPL.

88.     The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTPCPL.

89.     In violation of the UTPCPL, Defendant omitted and concealed material facts from Plaintiffs Henry and Jackson and other Pennsylvania Sub-Class members regarding the quality, characteristics, and benefits of the Baby Foods.

90.     The omissions and misrepresentations described herein were likely to deceive consumers into purchasing the Baby Foods.

91.     Defendant knew or reasonably should have known that its representations about the Baby Foods were false, that the Baby Foods contained, or were at risk of containing, heavy metals, chemicals or toxins, and otherwise were not as warranted and represented by Defendants.

92.     Defendant knew or should have known, at the time the Baby Foods left its control that they contained heavy metals, chemicals or toxins, and were not made of ingredients fit for consumption by babies.

93.     Defendant's deception is material as it influenced purchasing and payment decisions.

94.     Plaintiffs Henry and Jackson and Pennsylvania Sub-Class members have been damaged as a direct and proximate result of defendant's deceptive and unfair practices.

95.     Defendant intended that Plaintiffs Henry and Jackson and other Pennsylvania Sub-Class members rely on its representations, as their reliance was crucial to Defendant being able to command a premium for the Baby Foods.

96.     Defendant deceived and continues to deceive consumers about the quality and ingredients of its Baby Foods as well as the fitness of these products for ingestion by babies.  This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL.  This illegal conduct by Defendant is continuing, with no indication that it will cease.

97.     Defendant's actions in connection with the manufacture and distribution of the Baby Foods as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

98.     Defendant acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

99.     Defendant intended that Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members rely on the acts of concealment, omissions and misrepresentations regarding the nature of the Baby Foods so that Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members would purchase the Baby Foods.

100.    Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Baby Foods.

101.    Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members, had Defendant disclosed to them all material information regarding the Baby Foods, would have considered the omitted information material to their decision to purchase the Baby Foods at the price they paid.

102.    As a direct proximate result of Defendant's misrepresentations and omissions, Plaintiffs Henry and Jackson and the other members of the Pennsylvania Sub-Class suffered direct economic loss by purchasing the Baby Foods at a premium, and unwarranted, price. Had Plaintiffs Henry and Jackson and other members of the Pennsylvania Sub-Class known the heavy metals, chemicals or toxins content of the Baby Foods, they would not have bought them, or they would not have paid the premium price that they did.

103.    Plaintiffs Henry and Jackson and Pennsylvania Sub-Class Members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

104.    Defendant's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiffs Henry and Jackson and members of the Pennsylvania Sub-Class to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

## COUNT VIII
### Violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen.  Laws § 6 on Behalf of Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class

105.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

22

106.    Rhode Island Deceptive Trade Practices Act § 6-13 *et seq.* prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

107.    In its sale of goods throughout Rhode Island, Defendant conducts business and trade within the meaning and intendment of Rhode Island Deceptive Trade Act § 6-13.1-1.

108.    Plaintiffs Dias and Buffinton are members of the Rhode Island Sub-Class are consumers who purchased products from Defendant.

109.    Defendant violated Rhode Island Deceptive Trade Act § 6-13.1-1(6) by representing that its Baby Foods were:

    a.  Natural;

    b.  Appropriate for certain "Stage[s]" of babies;

    c.  "real food for babies."

110.    This was deceptive because the Baby Foods contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients.

111.    Defendant intentionally represented that the Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

112.    The facts that Defendant concealed or misrepresented were material in that Plaintiffs Dias and Buffinton and any reasonable consumer would have considered them when deciding whether to purchase the Baby Foods.

113.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

114.   Defendant has engaged and continues to engage in deceptive conduct in violation of the Rhode Island Deceptive Trade Practices Act.

115.   Defendant's misrepresentations and deceptive acts or practices resulted in Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class suffering actual damages when they purchased Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the presence, or risk of, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging.

116.   Defendant intended for Plaintiffs Dias and Buffinton and the members of the Rhode Island Sub-Class to rely on its deceptive misrepresentations and conduct when purchasing its Baby Foods.

117.   As a direct and proximate result of these violations, Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class have been harmed, and that harm will continue unless Defendant is enjoined from misrepresenting the quality and ingredients of its Baby Foods described herein.

118.   Pursuant to R.I. Gen. Law Title 6, Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B.  Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Classes;

C.  Ordering Defendant to pay restitution to Plaintiffs and the other members of the Classes;

D.  Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

E.  Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiffs and the other members of the Classes;

F.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes, as allowable by law;

G.  Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.   Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.  Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated:  March 19, 2021                          Respectfully submitted,

/s/ Liberato P. Verderame
Liberato P. Verderame
(ID# 032251997)
Marc H. Edelson (*pro hac vice* forthcoming)
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940

Tel: 215-867-2399 (work)
Medelson@edelson-law.com

Joshua H. Grabar
GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (267) 507-6085
Fax: (267) 507-6048
Jgrabar@grabarlaw.com

Attorneys for the Plaintiffs and the Putative Classes